UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRIAXX PRIME CDO 2006-1 LTD.,
TRIAXX PRIME CDO 2006-2, LTD.,
TRIAXX PRIME CDO 2007-1, LTD., and
TRIAXX ASSET MANAGEMENT LLC,

          Plaintiffs,

          - against -

U.S. BANK NATIONAL ASSOCIATION

          Defendant.

**NOTICE OF REMOVAL**

Case No. _____

---

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

PLEASE TAKE NOTICE that defendant U.S. Bank National Association, in its capacity as Trustee ("**U.S. Bank**" or the "**Trustee**"), through its undersigned counsel, hereby removes this action, *Triaxx Prime CDO 2006-1, Ltd. et al. v. U.S. Bank N.A.,* Index No. 656824/2021, from the Supreme Court of the State of New York, New York County to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1441 and 1446 and 12 U.S.C. § 632 based on the following:

**SUMMARY OF RELEVANT FACTS**

**The Triaxx CDOs**

1.  U.S. Bank, as successor to Bank of America, National Association (successor by merger to LaSalle Bank National Association ("LaSalle")), serves as the Trustee for three collateralized debt obligations ("**CDOs**"): the Triaxx Prime CDO 2006-1, Ltd. transaction ("**Triaxx 2006-1**"), the Triaxx Prime CDO 2006-2, Ltd. transaction ("**Triaxx 2006-2**"), and the Triaxx Prime CDO 2007-1, Ltd. transaction ("**Triaxx 2007-1**," and together with Triaxx 2006-1 and Triaxx 2006-2,

the "**Triaxx CDOs**"). The Triaxx CDOs are organized under the laws of the Cayman Islands and are governed by substantially identical indentures (the "**Indentures**"):

> (i)    the Indenture, dated as of September 7, 2006, by and among the Trustee's predecessor LaSalle, Plaintiff Triaxx Prime CDO 2006-1, Ltd., as Issuer (the "**2006-1 Issuer**"), and Triaxx Prime CDO 2006-1, LLC, as Co-Issuer;

> (ii)   the Indenture, dated as of December 14, 2006, by and among the Trustee's predecessor LaSalle, Plaintiff Triaxx Prime CDO 2006-2, Ltd., as Issuer (the "**2006-2 Issuer**"), and Triaxx Prime CDO 2006-2, LLC, as Co-Issuer; and

> (iii)  the Indenture, dated as of March 29, 2007, by and among the Trustee's predecessor LaSalle, Plaintiff Triaxx Prime CDO 2007-1, Ltd., as Issuer (the "**2007-1 Issuer**" and, together with the 2006-1 Issuer and 2006-2 Issuer, the "**Issuers**"), and Triaxx Prime CDO 2007-1, LLC, as Co-Issuer.

2.   In these transactions, the Issuers issued Notes, which are secured by a pool of Collateral Debt Securities (mainly, residential mortgage-backed securities) and other collateral (together, the "**Collateral**"). Pursuant to the "Granting Clause" of each Indenture, the Issuers granted the Collateral to the Trustee in order to secure the Issuers' obligations under the Indentures. The Indentures define Collateral to include not only the Collateral Debt Securities owned by the Issuers, but also "all proceeds, accessions, profits, income benefits, substitutions and replacements, whether voluntary or involuntary, of and to any of" the Collateral Debt Securities or other property of the Issuers. Accordingly, the Trustee then receives and holds the Collateral on behalf of the noteholders and other Secured Parties.

3.   The Issuers engaged the Collateral Manager to perform certain duties with respect to the Collateral. Plaintiff Triaxx Asset Management LLC ("**TAM**") currently serves as the Collateral Manager for the Triaxx CDOs.

**The Existing Action in This Court**

4.   Currently, the Triaxx CDOs are the subject of a lawsuit pending in this Court captioned *U.S. Bank N.A. v. Triaxx Asset Management LLC*, No. 18 Civ. 4044 (VM) (BCM) (S.D.N.Y) (the "**Existing Action**"). The Existing Action is just one action in a long-running series of litigations involving the Triaxx CDOs, which also include: *U.S. Bank, N.A. v. Triaxx Prime CDO 2006-1, Ltd.*, No. 15 Civ. 10172 (WHP) (S.D.N.Y.); *U.S. Bank, N.A. v. Triaxx Asset Management LLC*, No. 16 Civ. 08507 (AJN) (S.D.N.Y.); and *In re U.S. Bank National Association*, Index No. 650630/2021 (Sup. Ct. N.Y. Cnty.).

5.   The Existing Action concerns a dispute that arose under the governing agreements for the Triaxx CDOs. The dispute relates to certain multimillion-dollar invoices TAM submitted for payment as administrative expenses pursuant to each Triaxx CDO's priority of payments waterfall. The invoices were from an entity affiliated with TAM that TAM purportedly engaged in connection with certain litigations that it commenced on behalf of the Triaxx CDOs as part of its "activist litigation strategy." However, certain noteholders in each of the Triaxx CDOs objected to the payment of the invoices, as well as associated legal fees, as improper under the terms of the Indentures. Facing irreconcilable demands, the Trustee brought an interpleader action in respect of the three Triaxx CDOs, naming the noteholders, TAM, and the Issuers as Interpleader Defendants. *See* Existing Action, Dkt. Nos. 1, 203 (Operative Complaint).

6.   In the interpleader, the Trustee seeks a judicial determination whether (a) the disputed invoices constitute "Other Administrative Expenses" pursuant to Section 1.1 and Section

11.1(a)(i)(2) of the Indentures, (b) the Trustee is required to apply certain funds in payment of the disputed invoices, and (c) the Trustee is required to release for payment the legal fees incurred, in part, by TAM and the Issuers from amounts maintained by or delivered to the Trustee for deposit in the Accounts established under the Indentures (collectively, the "**Interpleader Claims**"). Pursuant to the Interpleader Claims, on each Payment Date, the Trustee has withheld certain funds allegedly allocable as administrative expenses under the Priority of Payments waterfall (the "**Retained Funds**").

7.    Through the interpleader action, the Trustee learned that, of the purported "tens of millions of dollars" of litigation recoveries (the **"Recoveries"**) that TAM received by or on behalf of the Issuers, a significant portion of these tens of millions of dollars have been disbursed by TAM and the Issuers to affiliates and third parties outside of the Indentures' Priority of Payments waterfall. As the Trustee believes these actions by the TAM and the Issuers directly contravene the express terms of the Governing Agreements, the Trustee amended the complaint to add, *inter alia*, a declaratory judgment claim and breach of contract claim against the TAM and the Issuers. *See* Existing Action, Dkt. No. 203.

8.    In response, TAM asserted a declaratory judgment counterclaim against the Trustee, seeking, *inter alia*, whether TAM was authorized to engage third party professionals on behalf of the Issuers and permit those professionals' fees to be paid both out of settlement funds at the time such funds are disbursed and under the Priority of Payments waterfall. *See* Existing Action, Dkt. No. 211.

9.    On January 12, 2012, after one of the noteholders filed a notice of voluntary dismissal of its claims relating to Triaxx 2006-1, the Court entered a limited order of dismissal with regard to Triaxx 2006-1 in the Existing Action. *See* Existing Action, Dkt. No. 328.

10. Because the Court in the Existing Action will make a ruling on the Interpleader Determinations as they relate to Triaxx 2006-2 and 2007-1, on January 12, 2021, the Trustee brought an Article 77 proceeding in New York State Court (the **"Article 77 Proceeding"**) seeking judicial instruction as to whether, in light of the pending interpleader claims, the Triaxx 2006-1 Indenture requires the Trustee to release or withhold the Retained Funds as they relate to Triaxx 2006-1.

11. On January 19, 2021, TAM removed the Article 77 Proceeding to the Southern District of New York, marking it as related to the Existing Action. *See U.S. Bank N.A. v. Triaxx Asset Management LLC*, No. 21 Civ. 00439, Dkt. No. 9 (VM) (BCM) (S.D.N.Y.). TAM stated that the basis for the removal was that the Court has original jurisdiction of the proceeding pursuant to the Edge Act, 12 U.S.C. § 632. *See id.* Judge Marrero accepted the Article 77 Proceeding as related, consolidated it with the Existing Action, and designated it to Judge Moses. *Id.*, Dkt. No. 20. The Trustee moved to remand the Article 77 Proceeding, arguing that the questions presented in the Article 77 Proceeding are not within the limited scope of this Court's Article III jurisdiction because the Trustee's requests to the Court for instruction in how it is required to proceed under the Indentures do not present an actual "case" or "controversy." *See* Existing Action, Dkt. No. 347. Judge Moses denied the Trustee's motion to remand. *See* Existing Action, Dkt. No. 387.

**The New York State Court Action**

12. On December 3, 2021, TAM and the Issuers filed a Summons with Notice in New York State Court, naming U.S. Bank as a Defendant (the "**Subsequent Action**"). The Notice states that "[t]he nature of this action is breach of contract and negligence/failure to avoid conflicts of interest in connection with your role as trustee to the Triaxx CDOs." The Notice further states

that Plaintiffs are seeking monetary damages and "a declaratory judgment that defendant has operated and continues to operate in conflict of interest with the plaintiffs and noteholders of the Triaxx CDOs."

**Relatedness of the Subsequent Action to the Existing Action**

13. A complaint has not yet been filed, but the Summons and Notice alone demonstrate the Subsequent Action is related to the Existing Action, and further provide no basis to suggest that the claims in the Subsequent Action could not have been brought as counterclaims in the Existing Action.[1] All of the parties to the Subsequent Action—the Trustee, TAM, and the Issuers—are parties to the Existing Action. And the Subsequent Action involves the exact same transactions and governing documents as the Existing Action—the Triaxx CDOs and the Indentures. It thus follows that any breach of contract claim would necessitate that the New York State Court in the Subsequent Action interpret the same Indentures to determine the rights and duties of the Trustee, TAM, Issuers, and Noteholders—exactly what the Court in the Existing Action is doing here.

14. What is more, discovery would wholly overlap between the two actions. Indeed, the Trustee has already produced virtually every document related to the Triaxx CDOs in the Existing Action. *See* Existing Action, Dkt. Nos. 300, 376. And TAM and the Issuers have already received an adverse ruling in the Existing Action where the Court held that the Indentures require that the Recoveries are to be transferred to the Trustee for deposit in the Triaxx CDO's accounts, not—as they have been—disbursed by TAM and Issuers outside of the Indentures' Priority of Payments waterfall. *See* Existing Action, Dkt. No. 331. Faced with this ruling, TAM and the Issuers are now attempting to avoid the jurisdiction of this Court by filing a

---

[1] The Trustee reserves all rights to object to TAM's claims in the Subsequent Action as untimely.

new action in New York State Court. In addition to the inefficiencies associated with litigating related issues in separate forums, litigating in two different jurisdictions creates a substantial risk of inconsistent rulings between the New York State Court and this Court.

## THIS NOTICE AND BASIS FOR REMOVAL JURISDICTION

15. Removal is proper pursuant to 12 U.S.C. § 632 and 28 U.S.C. §§ 1441(a) and 1446.

16. *First,* this Court has original jurisdiction over this proceeding pursuant to the Edge Act, 12 U.S.C. § 632. For Edge Act jurisdiction to apply, the following conditions must be met: (1) "[t]he suit must be a civil suit 'at common law or in equity'"; (2) a "'corporation organized under the laws of the United States' (*i.e.*, an Edge Act corporation) must be a party to suit"; and (3) the suit must arise out of "'transactions involving international or foreign banking.'" *Am. Int'l Grp., Inc v. Bank of Am. Corp.,* 712 F.3d 775, 780 (2d Cir. 2013) (quoting 12 U.S.C. § 632). When these elements are satisfied, "any defendant in any such suit may, at any time before the trial thereof, remove such suit from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law." 12 U.S.C. § 632.

17. Here, all three requirements are satisfied. *First*, the Subsequent Action is a civil suit. *Second*, the Trustee, which is the defendant in the Subsequent Action, is a national banking association organized under the laws of the United States. *See* Existing Action, Dkt. No. 203 ¶ 13. *Third*, the Subsequent Action arises out of transactions involving international or foreign banking because the Trustee provides corporate trust and other related services to, or on behalf of, the Triaxx CDOs, which are organized under the laws of the Cayman Islands. *See id.*

18. Indeed, the Second Circuit recently ruled that this Court had Edge Act jurisdiction in another action involving the same parties as in the Subsequent Action for these exact reasons.

*U.S. Bank, N.A. v. Triaxx Asset Mgmt. LLC,* 826 F. App'x 115 (2d Cir. 2020). The Second Circuit recognized that the Trustee is a "federally chartered corporation" and held that the suit arose from international banking because the Trustee "entered into a set of complex financial relationships that, in addition to other obligations, have resulted in it holding a lien over securities held by the Cayman Islands-based Issuers." *See id.* at 116–17. Accordingly, this Court has jurisdiction of the Subsequent Action pursuant to the Edge Act.

19. *Second*, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Trustee and the Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (affirming that Section 1332(a) "gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000.") (quoting 28 U.S.C. § 1332)

20. The Trustee is a national banking association with its main office in Cincinnati, Ohio. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that for purposes of assessing the existence of federal subject matter jurisdiction based on diversity of citizenship, national banking associations are deemed to be "a citizen of the State in which its main office, as set forth in its articles of association, is located"). TAM is a Delaware limited liability company that operates out of New York, and, upon information and belief, none if its members are citizens of Ohio. *See* Existing Action, Dkt. 331 at 20. The Issuers, Triaxx Prime CDO 2006-1, Ltd., Triaxx Prime CDO 2006-2, Ltd. and Triaxx Prime CDO 2007-1 Ltd., are exempted corporations organized under the laws of the Cayman Islands. *See id.*

21. This notice of removal is timely filed pursuant to 28 U.S.C. § 1446(a). It is filed within 30 days after the December 3, 2021 filing of the initial pleading (the summons with notice)

- 9 -

setting forth the claim for relief upon which the action or proceeding is based. *See id.* § 1446(b)(1); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 203–05 (2d Cir. 2001) (finding "that a summons with notice may serve as an initial pleading under section 1446(b)" as long as the summons with notice provides "information from which a defendant can ascertain removability").

22. In accordance with 28 U.S.C. § 1446(d), the Trustee will promptly file a copy of this Notice of Removal with the clerk of the Supreme Court of the State Court of New York, County of New York, and will serve a copy of the same upon counsel for all parties.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1441(a), because the Existing Action is pending in this District.

Dated:  December 22, 2021

ALSTON & BIRD LLP

By: _____

Alexander S. Lorenzo
Elizabeth A. Buckel
Evan S. Glasner
90 Park Avenue
New York, New York 10016
(212) 210-9400
alexander.lorenzo@alston.com
elizabeth.buckel@alston.com
evan.glasner@alston.com

*Attorneys for U.S. Bank*
*National Association,*
*in its capacity as Trustee*